UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NORTH AMERICAN SPECIALTY )
INSURANCE COMPANY, )
 )
      *Plaintiff* )
 )
v. )    *Docket No. 04-206-P-C*
 )
SEACOAST CRANE CO., INC., et al., )
 )
      *Defendants* )

### *RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT*

The plaintiff and all of the defendants move for summary judgment in this indemnification action. North American Specialty Insurance Company's Motion for Summary Judgment, etc. ("Plaintiff's Motion") (Docket No. 36); Defendants' Motion for Summary Judgment, etc. ("Defendants' Motion") (Docket No. 42). The defendants are Seacoast Crane Co., Inc. ("Seacoast"), William J. Belanger, Jr., Louise H. Belanger, Bruce C. Belanger and Kristen E. Belanger. I recommend that the plaintiff's motion be granted and that the defendants' motion be granted in part.

### I.  Summary Judgment Standard

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence

about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id.* (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

## B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at

3

their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (Citations and internal punctuation omitted).

## II.  Factual Background

The parties' respective statements of material facts include the following undisputed material facts.

The plaintiff, North American Specialty Insurance Company ("NAS"), has at all relevant times been in the business of issuing performance and payment surety bonds on behalf of contractors to secure their performance of construction work for various governmental agencies and private parties. North American Specialty Insurance Company's Statement of Material Facts, etc. ("Plaintiff's SMF") (Docket No. 37) ¶ 1; Defendants' Statement of Material Facts in Opposition to North American Specialty Insurance Company's Motion for Summary Judgment ("Defendants' Responsive SMF") (Docket No. 41) ¶ 1. At all relevant times, defendant Seacoast Crane Co., Inc. was in the business of construction contracting. *Id*. ¶ 2.

On or about March 17, 1995 the defendants executed an Agreement of Indemnity ("Agreement") in favor of NAS. *Id*. ¶ 3. On or about June 30, 1998 Seacoast entered into a contract with DCC Development Corporation ("DCC") relative to the construction of Dinsmore Communications Corporation's corporate headquarters in Seabrook, New Hampshire (the "Project"). *Id*. ¶ 6. NAS, as surety, issued a performance bond (No. 158023) (the "Bond") at the request and on behalf of Seacoast, as principal, for the benefit of DCC, as obligee, relative to the Project. *Id*. ¶ 7.[1]

---

[1] The defendants purport to deny this paragraph of the plaintiff's statement of material facts, Defendants' Responsive SMF ¶ 7, but their denial does not include a citation to the summary judgment record. The denial reads, in full: "Denied. This statement of fact calls for a legal conclusion." *Id*. This is an objection to the statement, not a proper denial. The portion of the paragraph that I have adopted cannot reasonably be characterized as stating a legal conclusion; it is purely factual. Because it is supported by the citation given by the plaintiff, it is deemed admitted.

On July 6, 1998 Seacoast entered into a subcontract with H. L. Smith, Inc. ("Smith") to construct the parking lot portion of the project. Statement of Material Facts in Support of Defendants' Motion for Summary Judgment ("Defendants' SMF") (Docket No. 43) ¶ 3; North American Specialty Insurance Company's Response to Defendants' Statement of Material Facts, etc. ("Plaintiff's Responsive SMF") (Docket No. 47) ¶ 3. In connection with this subcontract, Amwest Surety Insurance Company ("Amwest") issued a performance and payment bond to Smith (the "Amwest bond") under which Seacoast was the obligee and Smith was the principal. *Id*. ¶ 4.

Problems with construction of the parking lot arose regarding Smith's work on the project as early as September 1998 and on November 13, 2000, *id*. ¶ 6, DCC commenced an action against NAS and Seacoast in the New Hampshire Superior Court for the County of Rockingham (the "DCC lawsuit"), Plaintiff's SMF ¶ 8; Defendants' Responsive SMF ¶ 8. In the DCC lawsuit, DCC asserted a claim for breach of contract against Seacoast and made a claim on the bond issued by NAS in connection with the project. *Id*. On December 30, 2002 the Rockingham Superior Court entered an order holding Seacoast and NAS liable to DCC, awarding damages of $124,325 and finding Seacoast entitled to indemnification from Smith.[2] Defendants' SMF ¶ 7; Plaintiff's Responsive SMF ¶ 7. On December 9, 2003 the same court issued an order allowing DCC to recover attorney fees of $58,532.91 plus costs and interest, allowing Seacoast to recover this amount for DCC's fees and expenses for which Seacoast was found liable and allowing Seacoast to recover $36,170.79 in attorney fees and expenses that it had incurred individually. *Id*. ¶ 8. A court of competent jurisdiction declared Amwest insolvent on June 7, 2001. *Id*. ¶ 9.

NAS made demand upon the defendants to hold it harmless from all loss, costs and expenses as a result of the claim by DCC and the resulting order of the Rockingham Superior Court dated

---

[2] The parties also agree that the Rockingham Superior Court "entered an order and final judgment" to this effect on December 9, (*continued on next page*)

5

December 9, 2003. Plaintiff's SMF ¶ 10; Defendants' Responsive SMF ¶ 10. The defendants did not satisfy the judgment in the DCC lawsuit nor did they reimburse NAS or otherwise hold it harmless from and against its loss, costs and expenses as a result of the claim by DCC. *Id.* ¶ 11.[3] On or about June 14, 2004 NAS paid $208,380.26 to satisfy the judgment in the DCC lawsuit pursuant to the December 9, 2003 order. *Id.* ¶ 12. NAS has also incurred attorney fees and expenses in the amount of $35,537.71 in the investigation, defense and resolution of DCC's claim and in attempting to enforce the terms of the Agreement. *Id.* ¶ 14.[4]

On March 22, 2006 the Maine Superior Court (York County) held that Seacoast was not liable to NAS by virtue of the Maine Insurance Guaranty Association Act ("MIGA Act"), 24-A M.R.S.A. § 4431 *et seq*. Defendants' SMF ¶ 10; Plaintiff's Responsive SMF ¶ 10.

### III.  Discussion

The plaintiff seeks summary judgment against defendants William J. Belanger, Jr., Louise H. Belanger, Bruce C. Belanger and Kristen E. Belanger (the "individual defendants") on its claim for indemnification.[5] Plaintiff's Motion at 1, 5-8. The individual defendants seek summary judgment on all claims asserted against them. Defendants' Motion at 5-7. Defendant Seacoast seeks summary judgment on the basis of collateral estoppel resulting from the March 22, 2006 order of the Maine Superior Court (York County). *Id.* at 4-5. The plaintiff does not object to Seacoast's motion. North

---

2003. Plaintiff's SMF ¶ 9; Defendants' Responsive SMF ¶ 9.

[3] The defendants purport to deny this paragraph of the plaintiff's statement of material facts, Defendants' Responsive SMF ¶ 11, but their denial does not include a citation to the summary judgment record. The denial reads, in full: "Denied. This statement of fact calls for a legal conclusion." *Id*. This is an objection to the statement, not a proper denial. The portion of the paragraph that I have adopted cannot reasonably be characterized as stating a legal conclusion; it is purely factual. Because it is supported by the citation given by the plaintiff, it is deemed admitted.

[4] The defendants purport to deny this paragraph of the plaintiff's statement of material facts, Defendants' Responsive SMF ¶ 14, but their denial does not include a citation to the summary judgment record. The denial reads, in full: "Denied. This statement of fact calls for a legal conclusion." *Id*. This is an objection to the statement, not a proper denial. The portion of the paragraph that I have adopted cannot reasonably be characterized as stating a legal conclusion; it is purely factual. Because it is supported by the citation given by the plaintiff, it is deemed admitted.

[5] The complaint includes claims for indemnification (Counts I and II), breach of contract (Count III) and specific performance (Count (*continued on next page*)

American Specialty Insurance Company's Objection to the Defendants' Motion for Summary Judgment, etc. ("Plaintiff's Opposition") (Docket No. 46) at 1. That portion of the defendants' motion should be granted. *See* Order and Decision, *Maine Ins. Guar. Ass'n v. North Am. Specialty Ins. Co.*, Maine Superior Court (York County), dated March 22, 2006 (Exh. 6 to Defendants' Objection to North American Specialty Insurance Company's Motion for Summary Judgment, etc. ("Defendants' Opposition") (Docket No. 40)).

The individual defendants contend that "the contractual indemnity claim by NAS against the Belangers is barred by the MIGA Act." Defendants' Motion at 5. They assert that they are "in the *exact* same position as Seacoast" was in the state-court action. *Id*. at 6 (emphasis in the original). "[J]ust like Seacoast, the Belangers lost the benefits of the Amwest bonds." *Id*. Thus, they contend, they "are insureds of insolvent insurers within the meaning of the MIGA Act." *Id*.

The individual defendants were not named parties to the state-court litigation. The statute that created the Maine Insurance Guaranty Association ("MIGA") states its purpose as being

> to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

24-A M.R.S.A. § 4432. Nothing in their statement of material facts suggests that the individual defendants were claimants under or holders of an insurance policy issued by an insurer that was insolvent at the relevant time. The defendants' own statement of material facts establishes that the Amwest bonds, issued by an insurer that was subsequently declared insolvent, were issued to Smith with Seacoast as the obligee. Defendants' SMF ¶¶ 4, 9. The individual defendants were neither the holders nor the beneficiaries of the Amwest bonds. A "covered claim" under the Act is "an unpaid

---

V). Complaint (Docket No. 1) at [4]-[6]. There is no Count IV in the complaint.

claim . . . arising under and within the coverage and applicable limits of a policy . . . of insurance . . . issued by an insurer that becomes an insolvent insurer . . . ." 24-A M.R.S.A. § 4435(4). From all that appears in the summary judgment record, the individual defendants have no such claim, nor are they insurers who are members of MIGA and who therefore have been assessed the cost of the protection that they now seek.

Contrary to the contention of the individual defendants, Defendants' Motion at 6, denying them the protection afforded by the MIGA Act will not "circumvent the purpose and intent of the MIGA Act." Nor will it be "contrary to the holding in *Pinkham* [*v. Morrill*, 622 A.2d 90 (Me. 1993)]." *Id*. In that case, the corporate owner of a vehicle involved in an accident was insured by an insurer that had been declared insolvent. *Id*. at 91. The injured driver of another vehicle involved in the accident settled with her own insurer and assigned to her insurer her claim against the corporate defendant. *Id.* at 92. The corporate defendant claimed that the MIGA Act prohibited subrogated recoveries against MIGA. *Id*. The subrogated insurer claimed that it was pursuing a subrogation action only against the insureds, not MIGA. *Id*. The Maine Law Court held that subrogation actions by an insurer that has paid uninsured motorist benefits to its insured against the tortfeasor responsible for the damages for which such payment was made are barred by the Act if the insurance carrier providing liability coverage to the tortfeasor has become insolvent. *Id*. at 93. These circumstances are not at all analogous to those presented by the instant case. Here, the individual defendants were not insured by Amwest in any sense. Allowing the plaintiff to collect from the individual defendants on their indemnification cannot result in not allowing the plaintiff to collect against MIGA "while allowing [it] to collect against those the MIGA was created to protect." *Id*. at 95. Again, MIGA was not created to protect individual indemnitors on a performance or payment bond. Nor were the individual defendants the "insureds of insolvent insurers," *id*., in this case. The named defendants in *Pinkham*,

on the other hand, were clearly the insureds of an insolvent insurer. The MIGA Act simply does not apply to the individual defendants. Their motion for summary judgment should be denied. Nothing in *Ventulett v. Maine Ins. Guar. Ass'n*, 583 A.2d 1022 (Me. 1990), or *Maine Ins. Guar. Ass'n v. Folsom*, 769 A.2d 185 (Me. 2001), the other Maine authority cited by the defendants, Defendants' Motion at 5, even begins to suggest otherwise.

This argument is the sole one raised against the plaintiff's motion for summary judgment by the individual defendants. Defendants' Opposition at 4-6. While I have rejected that argument, it does not necessarily follow that the plaintiff's motion should be granted. A motion for summary judgment must always be decided on the merits, even in the absence of any response. *Guptill v. Martin*, 228 F.R.D. 62, 66 (D. Me. 2005).

Here, the individual defendants admit that they executed the indemnity agreement at issue. Plaintiff's SMF ¶ 3; Defendants' Responsive SMF ¶ 3. They admit that the Indemnity Agreement provides as follows:

> The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds; (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement; or (3) In enforcing any of the covenants and conditions of this Agreement.
>
> In the event of any payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about matters herein contemplated by the Agreement under the belief that it is or was liable for the sums or amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

*Id*. ¶¶ 4-5. The individual defendants admit that the plaintiff paid $208,380.26 to satisfy the judgment on the underlying lawsuit. *Id*. ¶ 12. They must accordingly indemnify the plaintiff pursuant to the terms of their agreement. The plaintiff is entitled to summary judgment.[6]

### IV. Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion for summary judgment be **GRANTED** and that the defendants' motion for summary judgment be **GRANTED** as to defendant Seacoast Crane Co., Inc. and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 21st day of November, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[6] It appears that the claim for "common law indemnity" asserted in Count II of the complaint is inconsistent with the claims based on the written agreement, which provides the basis for my recommended decision. The plaintiff should be required to show cause why Count II should not be held to be moot should the court adopt my recommendation.